**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| BRENDA ROBISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-00080-TWP-KMB |
| | ) |
| RIVERA CONSULTING GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Rivera Consulting Group, Inc. ("Rivera Consulting") (Filing No. 54). Plaintiff Brenda Robison ("Robison") was terminated from her position at Rivera Consulting in August 2023 and initiated this action asserting claims of sex discrimination (female) and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Indiana Civil Rights Law ("ICRL"), IC § 22-9-1 (Filing No. 1). The Court granted Defendant's Partial Motion to Dismiss with respect to the claims arising under the ICRL (Filing No. 35), and Defendant now moves for summary judgment on Robison's remaining federal retaliation and sex discrimination claims. For the following reasons, Defendant's Motion for Summary Judgment is **granted**.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Plaintiff as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.      Robison's Employment and Rivera Consulting's Chief Financial Officers**

Rivera Consulting is a technology company founded in the early-2000s to provide IT professional services, and owned by Dr. Joey Rivera ("Rivera") who also serves as the Chief Executive Officer (Filing No. 55-1 at 9:4–14). Robison was hired by Rivera Consulting in 2013 as an accounting manager making $55,000.00 per year (Filing No. 58-1). She reported directly to the company's Chief Financial Officer ("CFO") at the time, Don Pollard ("Pollard"). Before her time at Rivera Consulting, Robison worked as a staff accountant from 2000–2003, a senior staff accountant from 2003–2004, an accounting manager from 2004–2007, a senior accountant from 2008–2010, and a budget analyst from 2010–2013 (Filing No. 55-2 Ex. 5 at 65). Robison had her associate degree in accounting when she began working at Rivera Consulting in 2013 and was working on obtaining her bachelor's degree in accounting. *Id.* Rivera paid $17,000.00 towards Plaintiff's tuition so that she could complete her bachelor's degree in accounting.

Pollard was also hired in 2013 with an initial salary of $130,000.00. He received regular pay increases, and by the time he retired in December 2018, Pollard was making $200,000.00 annually. *Id.* at 85:11–15. Prior to joining Rivera Consulting, Pollard worked one year as a chief accounting officer, two years as a director of finance, six years as a vice president of finance/CFO, two years as a senior vice president of finance/CFO, and one year as a senior vice president and FP&A (Filing No. 58-3).

After Pollard retired in 2018, Troy Thompson ("Thompson") replaced Pollard, and he was hired with an initial salary of $175,000.00 (Filing No. 55-2 at 86:14–16). Prior to joining Rivera Consulting, Thompson served as a controller and director of accounting and finance for seven years at another company and five years as a government services division controller (Filing No. 58-4). In this role, Thompson's responsibilities included managing all accounting and payroll staff,

leading a companywide proposal regarding pricing strategy, producing business proposals, overseeing key financial reporting, developing and maintaining various accounting processes, and acting as the Corporate Facility Security Officer. *Id*. In 2020, in large part due to the COVID-19 pandemic, Rivera laid off approximately seventy-four employees, including its CFO, Thompson. When Thompson was terminated in October 2020, he was earning $208,000 annually (Filing No. 55-2 at 86:10–11).

Robison received regular raises during her employment with Rivera Consulting and was promoted several times (Filing No. 58-1). She served as Rivera Consulting's accounting manager from 2013–2017, the manager of accounting and contract administration from 2017–2020, and with Thompson's termination in October 2020, she was promoted to a newly created position, director of finance. *Id.* With her new title she was given a raise to $120,000. *Id.*

**B.    CFO Duties and Elimination of CFO Role**

Prior to the COVID-19 pandemic, Rivera Consulting needed an in-house CFO to handle long-term financial strategy and drive continued growth (Filing No. 54-2 at 97:7–14). A Rivera Consulting job posting described its expectation for its CFOs to "play a strategic role in the overall management of the company while providing hands-on leadership for all aspects of the finance, accounting, human resources, and legal functions." (Filing No. 54-3 at 82).

During the COVID-19 pandemic, Rivera Consulting financial conditions led Rivera Consulting to leave the CFO position unfilled from 2020 to 2025 (Filing No. 58-6 at 60:4–13).[1] Rivera took over some of the duties of the CFO after 2020 including projections to predict the company's fiscal wellness, profitability, and proposals. *Id.* at 60:15–61:2. Robison took over many

---

[1] In 2019, Rivera had revenue of $18,588,459.00 and in 2020, that revenue decreased to $12,928,655.00 (55-2 at 87:6- 12).

of the other duties as the new director of finance, but no one ever told Robison that she was being promoted to take over the CFO job duties. *Id*. at 60:3-9.

**C.    Robison's Duties as Director of Finance**

Rivera did not create a job description of the new director of finance role (Filing No. 54-2 at 97:1–4). But he testified that Robison's responsibilities were "month-end closing, financial reporting, presenting financial results to senior leadership, external audits, complying with GAAP principles, and managing banking, the 401(k) plan, employee benefit providers, and property and casualty insurance (Filing No. 55-1 at 75:1–77:21). Robison summarizes her responsibilities to include providing financial updates, managing two employes, discussing cash flow problems, handling audits, advising on contract projections, preparing budgets, exploring opportunities to return to profitability, and handling human resource matters (Filing No. 8; Filing No. 9; Filing No. 10; Filing No. 11; Filing No. 12; Filing No. 13; Filing No. 15; Filing No. 16).

**D.    Robison's Complaints and Termination**

Upon her promotion to director of finance, Robison questioned why she was not receiving the same compensation as a CFO. Rivera told her it was because she was not performing all of the responsibilities of a CFO. Again, on July 28, 2022, Robison complained about her salary and title to Rivera in a Teams message, "I am curious why I am the only member of the Leadership team without a VP title or salary." (Filing No. 58-22). She received no response or explanation from Rivera.

On August 9, 2023, Rivera made the decision to do another round of layoffs due to continued loss in revenue (Filing No. 54-3 at 222:22–24). Rivera laid off nine employees, including five men and four women, one of whom was Robison. *Id.* at 216:18-24, 238:11–19.

## II.    SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v.Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

Robison's remaining claims against Rivera Consulting are Title VII sex discrimination and retaliation. The Court will first discuss each in turn.

### A.   Title VII Sex Discrimination

Robison contends that although she assumed the duties of the previous CFOs, Rivera Consulting denied her both the corresponding title and salary of the role and that her sex was the reason for the failure to promote (Filing No. 58 at 1).

Rivera Consulting argues that Robison abandoned her failure to promote and unlawful termination theories under her discrimination claim by ignoring Rivera Consulting's arguments on these issues (Filing No. 59 at 1). While Robison does not delineate her responses into separate claims, she argues various material factual disputes exist "concerning Plaintiff's duties, compensation, leadership role, and the credibility of Defendant's stated reasons for its pay practices and termination decision (Filing No. 58 at 9). The Court does not consider these claims abandoned. However, because they are based on the same evidence, the Court will discuss them together.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Seventh Circuit has held that "all discrimination cases present the same basic legal inquiry: At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enters.*, Inc., 834 F.3d 760, 765 (7th Cir. 2016)) (emphasis omitted; alteration in original).

However, as a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," courts employ the well-known burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Under *McDonnell Douglas*, a plaintiff must first show that (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she suffered an adverse employment action; and (4) a similarly situated individual outside her protected class received more favorable treatment. *Ferrill*, 860 F.3d at 500. If the plaintiff demonstrates these elements, then "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Id.* "If the employer does this, then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

It is undisputed that Robison meets the first three *McDonnell Douglas* factors; she is a member of a protected class; she performed her job to her employer's expectations; and she suffered an adverse employment action. Rivera Consulting argues that Robison's claims fail because no similarly situated male received more favorable treatment. In addition, as a matter of law by her admissions: "(1) she did not have the qualifications or experience required for the CFO role, (2) she did not take over all of the former CFO's responsibilities, (3) Rivera was facing extreme financial hardship, (4) she was laid off due to the financial condition of the company, (5) Rivera had no other option at the time than to lay off employees, (6) Rivera's decision to implement layoffs was reasonable, and (7) her gender had nothing to do with her termination." (Filing No. 55 at 2). Rivera Consulting also proffers evidence that Robison was neither qualified for, nor

7

performed the job functions of, a CFO, and that she and eight other employees were lawfully terminated as part of legitimate company layoffs. *Id.*

Based on these admissions, Rivera Consulting argues that Robison cannot establish that it denied her a promotion or paid her less because of her gender, and that she cannot refute Rivera Consulting's legitimate, non-retaliatory reason for her termination—the financial conditions of the company and resulting layoffs. *Id.* Rivera Consulting asserts that Robison lacks evidence to support her claim that her termination was unlawful and instead relies on her "personal feeling" that she believes Rivera Consulting's failure to promote her, and her eventual termination, were because she was a female. *Id.*

Robison responds in opposition arguing that she was similarly situated to her predecessors, that the evidence shows she assumed the CFO duties, and that the Defendant's justification for terminating her is pretext (Filing No. 58 at 3–7).

On reply, Rivera Consulting argues that Robison's prima facie case of wage discrimination fails because the evidence in the record establishes (1) that Plaintiff did not have the experience or qualifications necessary to perform the CFO role, (2) that she did not perform the CFO role, and (3) that Rivera's failure to pay her CFO wages for her Director of Finance role was not pretext for unlawful discrimination (Filing No. 50 at 2).

### 1. Similarly Situated

First, Robison argues that she was similarly situated to her predecessors. She contends that she has thirty-three years of experience working in accounting and management, experience with budgeting, financial reporting, and managing staff accountants; and both an associate's degree and a Bachelor of Science in Accounting (Filing No. 58-2). Robison asserts that her experience and qualifications are "quite similar" to Pollard and Thompson (Filing No. 58 at 4).

"A suitable comparator is an employee who is directly comparable to the plaintiff 'in all material respects.'" *Palmer v. Ind. Univ.*, 31 F.4th 583, 590 (7th Cir. 2022) (citing *Warren v. Solo Cup Co.*, 516 F.3d 627, 630–31 (7th Cir. 2008)). "There must be 'enough common factors' between the plaintiff and h[er] comparator 'to allow for a meaningful comparison.'" *Id.* (citing *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012)).

On reply, Rivera Consulting argues that Pollard and Thompson cannot be considered similarly situated because Robison's experience and qualifications do not equate to the executive-level strategic finance experience of Pollard and Thompson (Filing No. 59 at 3). The Court agrees.

Thompson was a CPA with thirteen years of experience in controller and high-level roles, including managing financial departments (Filing No. 54-3 at 84:6–10). Pollard served in controller or higher-level positions and had twenty-three years managing financial departments, including serving as CFO for another company for nearly ten years. *Id.* at 79:3–10; (Filing No. 58-3). While Robison did have more years of experience, thirty-three, the bulk of her experience was as an accounting manager. She did not become the director of finance until October 2020 (Filing No. 58-1). Additionally, during the first part of her career she had not yet obtained her bachelor's degree. She did not obtain it until sometime after starting at Rivera Consulting. So at the time of her termination, she had only ten years of experience with a bachelor's degree.

Further, when Robison was promoted to Director of Finance, she had never previously held any CFO or Controller roles and had not worked on developing long-term strategic objectives, like her predecessors (Filing No. 54-3 at 76:5–9; 78:8–9). Robison's lack of experience in high level roles makes her materially different from Pollard and Thompson, thus she is not similarly situated to her predecessors.

9

### 2. **Assumption of the CFO Duties**

Next, Robison argues that she was handling all the CFO responsibilities. Robison disputes Rivera's characterization of her duties in her new role as Director of Finance (Filing No. 58 at 2). But importantly, Robison admits that she knew her role was not intended to take over all of Thompson's former responsibilities and that she did not take over planning (Filing No. 55-2 at 60:24–61:7). She took over many of the former CFO duties, but she received a promotion and salary increase for the new duties she took on. Her testimony shows that she did not play a strategic role or advise on cost-saving measures. *Id.* at 147:16-20, 196:3–5.

### 3. **Pretext**

Finally, Robison argues that the reasons for her termination were pretext. But again, her own testimony shows that in 2023 Rivera Consulting was losing contracts, "running low on money every week," and did not have a source of revenue. *Id.* 88:24–89:11. Robison described the situation as "pretty dire." *Id.* at 89:2. This is consistent with Rivera's explanation because Rivera Consulting could not make payroll. Robison testified that layoffs were warranted when Rivera laid her off, and said she did not deny that she was laid off because of the company's poor financial state (Filing No. 55-2 at 217:4–6; 224:3–12; 237:9–22). There was a legitimate, non-discriminatory reason for her termination.

Additionally, Robison testified that Rivera never said or did anything to make her feel like she was being treated differently because she was a woman, and she did not experience comments that made her feel discriminated against while working at Rivera Consulting (Filing No. 55-2 at 231:23–232:6, 236:11–24). Rather, it is just "a personal feeling" that she believes Rivera's failure to promote her, and her eventual termination, was connected to her sex. *Id*.

Because the evidence does not permit a reasonable factfinder to conclude that Robison's sex caused a pay disparity with similarly situated males or led to her termination, Rivera Consulting is entitled to summary judgment on Robison's Title VII sex discrimination claims.

**B.    Title VII Retaliation**

Robison's Complaint alleges that she was terminated after reporting discrimination regarding her wages and job title in violation of Title VII (Filing No. 1 ¶ 22). However, Robison did not discuss the claim in her statement of claims and fails to discuss it in her summary judgment response (Filing No. 52; Filing No. 58). To the extent this claim is not deemed abandoned, it must fail because Robison provides no evidence in the record that she complained that the unfairness about her job title and wage was because of her sex. "To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) [s]he engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citation omitted). Such protected activity consists of opposing or complaining about discrimination or harassment by the employer *based on* "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (emphasis added).

Robison testified that she agrees that Rivera's decision to implement layoffs in in 2023 was warranted because they did not have money to make payrolls, she did not believe that her gender had anything to do with her termination, and she has no evidence to support that her termination was an act of retaliation by Rivera. (Filing No. 55-2 at 2217:4-6; 224:3-12; 237:9-22; 39:23-240:1). Rivera Consulting is therefore entitled to summary judgment on the retaliation claim.

**4.   CONCLUSION**

For the reasons discussed above, Rivera Consulting's Motion for Summary Judgment (Filing No. 54) is **GRANTED**. Robison's Title VII sex discrimination and retaliation claims are **DISMISSED with prejudice** on summary judgment.

Final judgment will issue under separate order.

**SO ORDERED.**

Date:   3/18/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Allison Dempsey
Stoll Keenon Ogden PLLC
allison.dempsey@skofirm.com

Laura Elizabeth Landenwich
ADAMS LANDENWICH WALTON, PLLC
laura@justiceky.com

Amy L. Miles
Stoll Keenon Ogden PLLC
amy.miles@skofirm.com